**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

INSTALLED BUILDING PRODUCTS, LLC,

                              Plaintiff,                    13-CV-1112-A(Sc)
             v.                                            **DECISION AND ORDER**

SCOTT COTTRELL and
AMERICAN BUILDING SYSTEMS,

                              Defendant.
_____

        Plaintiff Installed Building Products (IBP), a building supply company,

alleges that its former employee, Defendant Scott Cottrell, breached a non-

compete agreement when he began working for IBP's competitor, Defendant

American Building Systems (ABS).  The Defendants filed a motion to dismiss

arguing that the Plaintiff's pleadings are insufficient to state a cause of action and

that the non-compete agreement between Cottrell and IBP is unenforceable

under New York law.  Magistrate Judge Scott filed a Report and

Recommendation that recommends granting the motion to dismiss.

        Whether the non-compete agreement at issue is enforceable will ultimately

depend on whether the agreement is "reasonable."  This requires a fact-intensive

analysis that the Court cannot conduct on the current record.  Thus, the Court

cannot conclude at this time that IBP's non-compete agreement is

unenforceable.  Instead, the Court holds that by alleging that Cottrell is working

for IBP's competitor, IBP has adequately stated a claim that Cottrell breached the

1

non-compete agreement.  Therefore, for the reasons stated below, the Court does not adopt the Report and Recommendation and denies the Defendants' motion to dismiss.

## Background

Because this case is before the Court on the Defendants' motion to dismiss, the Court must "accept[] as true the complaint's factual allegations and draw[] all reasonable inferences in the plaintiff's favor."  *New York Life Ins. Co. v. United States*, 724 F.3d 256 (2d Cir. 2013).

IBP has over eighty locations around the country from which it "is engaged in the business of selling, marketing and installing a wide range of building products, including, but not limited to: wall insulation; attic insulation; spray fiberglass; spray foam; masonry insulation; seamless gutters and leaf protection; metal roofs; soffit and fascia; vinyl shutters, shower doors and bath hardware; shelving and mirrors; custom closets; garage doors; acoustical ceilings; [and] fireplaces and firestopping."  Dkt. No. 1 ¶ 1.[1]

Cottrell began his employment with IBP in 2004 as a salesperson at IBP's Sanborn, New York location.  ¶ 6.  Approximately two-and-a-half years later, Cottrell became the branch manager of IBP's Erie, Pennsylvania location.  ¶ 7. In November 2010, "as a term and condition of his continued employment with IBP," Cottrell signed the non-compete agreement that is central to the parties' dispute in this case.  ¶ 8.  As consideration for $12,500.01, paid in three annual

---

[1] Unless otherwise noted, all citations in this section are to the complaint.

installments, ¶ 14, Cottrell agreed to a number of terms, including, as is relevant to the present motion, the following:

*First,* an "acknowledgment" by Cottrell that during his employment with IBP he had "been given, and will continue to be given, training in the Company's methodologies as well as access to certain confidential and proprietary information concerning the business and financial affairs of the Company . . . which constitutes trade secrets under state law, as well as certain other confidential and proprietary information concerning the business and financial affairs of the Company and its Affiliates that may not constitute trade secrets under state law, but are nonetheless confidential." *Id.* at 3.

*Second,* for two years following Cottrell's departure from IBP and within a 100-mile radius of IBP's Sanborn and Erie locations, Cottrell agreed to not "directly or through others, engage or invest in the business of selling, marketing or installing the building products sold, marketed or installed by" IBP. *Id.* at 5. (The overlapping 100-mile radii shut Cottrell out of most of Western New York, a large portion of Northwestern Pennsylvania, and the Northeastern area of Ohio. Dkt. No. 18 at 6.)  The agreement provides that Cottrell may not "solicit, call upon, or initiate communication or contact with any customer or prospective customer of [IBP] . . . with whom [Cottrell] had contact during the last twelve months of [Cottrell's] employment, with a view to selling, marketing or installing any service or product that is sold, marketed or installed by [IBP]." Dkt. No. 1 at 5.  It further provides that Cottrell may not "attempt to divert any customer,

3

supplies or vendor of" IBP from doing business with IBP.  The agreement also prohibits Cottrell, during the restrictive period, from "induc[ing] or attempt[ing] to induce" IBP's employees to leave IBP.  *Id.*

*Third*, Cottrell agreed not to "disclose any of [IBP's] Confidential Information" and not to "use any of the Confidential Information for [Cottrell's] own purposes or benefit or for the purposes or benefit of any third party."  *Id.* at 6.  The agreement defines "Confidential Information" to include "information concerning the financial affairs of [IBP]," as well as "information concerning . . . product specifications, processes, past, current and planned manufacturing, distribution, sales and installation methods and processes, customer lists, current and anticipated customer requirements, price lists and pricing information, market studies, business plans, computer software and database technologies, the names and backgrounds of key personnel, and any other similar information . . . whether or not a trade secret under the state trade secret law."  *Id.* at 4.

In December 2011, about a year after Cottrell signed the non-compete agreement, IBP closed its Erie location, and Cottrell returned to IBP's Sanborn location where he became the "Insulation and Gutter Foreman and a Residential and Commercial Salesperson."  ¶ 15.  In this role, Cottrell was the highest-ranking IBP employee in Sanborn.  *Id.*  However, slightly less than two years later, in September 2013, IBP terminated Cottrell's employment "because of unsatisfactory performance, including, but not limited to, selling work to one of IBP's customers at a below-market rate to IBP's detriment."  ¶ 16.  Less than one

month after his termination, "Cottrell began employment with IBP's direct competitor, ABS [American Building Systems]."  ¶ 17.

The parties disagree about the nature of Cottrell's activities after he began his employment with ABS.  Nonetheless, IBP pleads—all upon information and belief—that after his employment with IBP was terminated, Cottrell "will attempt to solicit customers of IBP with whom he had contact during his last twelve months of employment at IBP; that Cottrell "will attempt to induce employees of IBP" to leave IBP; and that Cottrell "is using IBP's confidential information to gain an unfair advantage, and has in his possession or control confidential information which belongs to IBP."  ¶¶ 18-20.  Based on these beliefs, IBP sent Cottrell a letter "requesting that he cease and desist from further violating the [non-compete] agreement."  ¶ 21.  However, IBP claims that "Cottrell has failed or refused to comply with IBP's request."  ¶ 22.

IBP then filed this lawsuit requesting damages and extensive injunctive relief.  IBP raises six claims: (1) a claim for breach of contract against Cottrell; (2) a claim for misappropriation of trade secrets against Cottrell; (3) a claim for breach of the duty of loyalty against Cottrell; (4) a claim of tortious interference against ABS as to IBP's "business and contractual relationships with its existing customers, suppliers, vendors, and employees"; (5) a claim of tortious interference against ABS as to IBP's non-compete agreement with Cottrell; and (6) a claim of unjust enrichment against Cottrell and ABS.

Cottrell and ABS filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) making two principal arguments: (1) that IBP's pleadings, the most critical aspects of which are upon information and belief, are insufficient to state a claim that Cottrell has actually violated the non-compete agreement; and (2) that the non-compete agreement is unenforceable under New York law.  Magistrate Judge Scott, to whom the Court referred this case for all pre-trial matters and to hear and report upon dispositive motions, filed a Report and Recommendation, Dkt. No. 18, which recommends granting the Defendants' motion to dismiss in its entirety.  IBP filed objections, and this Court heard oral argument on June 16, 2014.  Because IBP's objections are to a dispositive motion, the Court reviews the Report and Recommendation *de novo*. *See* 28 U.S.C. § 636(b)(1).

<u>**Discussion**</u>

Before reaching the merits, the Court must address several preliminary issues.  The Court will first discuss the standard of review applicable to the Defendants' motion to dismiss.  Although this is typically a noncontroversial issue, the parties disagree on the documents the Court may consider in deciding the motion, as well as the extent to which the Plaintiff may make allegations upon information and belief.  The Court will then address which state's law governs this case.

## I.   <u>The Standard on a Motion to Dismiss</u>

The standard to survive a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6) is well settled.  "[A] complaint must contain sufficient factual

material, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "pleads factual

content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged."  *Id.*  In other words, the complaint must

allege facts supporting its legal claims; these need not be "'detailed factual

allegations,' but [the pleading standard] demands more than an unadorned, the

defendant-unlawfully-harmed me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at

555).  Although the general outline of this standard is clear, the Plaintiff's

complaint and its response to the Defendants' motion to dismiss have revealed

two ancillary issues that the Court must address.

### A. Pleading Upon Information and Belief

First, other than the allegation that "IBP learned . . . following his

separation from employment with IBP, [that] Cottrell began employment" with

ABS, Dkt. No. ¶ 17, the key allegations in the Plaintiff's complaint are made

solely upon information and belief.  (For example, the complaint alleges upon

information and belief that Cottrell is violating the non-compete agreement by

using IBP's confidential information and by soliciting IBP's customers.  *Id.* ¶¶ 19-

20.)  The Defendants argue vigorously that the Plaintiff's information and belief

pleadings are insufficient to state a claim.  However, the *Iqbal/Twombly* standard "does not prevent a plaintiff from pleading facts 'upon information and belief' where [1] the facts are peculiarly within the possession and control of the defendant or [2] where the belief is based on factual information that makes the inference of culpability plausible."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citation and internal quotation marks omitted).  This is not a case where "the facts are peculiarly within the possession and control of the defendant."  *Id.*  The Plaintiff has identified no barrier that would prevent it from simply asking the customers or employees it alleges Cottrell has solicited whether Cottrell *has*, in fact, solicited them.

Instead, this is a case in which the Plaintiff's "information and belief" pleadings will be sufficient to survive a motion to dismiss only if "the belief is based on factual information that makes the inference of culpability plausible." *Id.*  In other words, the Court's task here is to determine—when viewing all of the complaint's factual allegations in the light most favorable to the Plaintiff—whether the information and belief pleadings "raise a reasonable expectation that discovery will reveal evidence" proving the Plaintiff's claim.  *Twombly*, 550 U.S. at 556.

## B. Documents Outside the Pleadings

The second pleading issue the parties have raised is whether the Court may consider documents outside the pleadings in ruling on the Defendants' motion to dismiss.  The Plaintiff attached two affidavits and two photographs as

exhibits to its response to the Defendants' motion to dismiss.  The first affidavit, from IBP's Regional Manager, attests that the Manager "reasonably believe[s]" that Cottrell is violating the non-compete agreement in a number of ways and states that "[the Regional Manager] recently learned that Cottrell . . . is also engaged in the business of selling, marketing or installing the building products sold, marketed or installed by IBP."  Dkt. 15-1 ¶ 17.  The affidavit then references a photograph of Cottrell's ABS business card which "was left near one of IBP's locations."  *Id.* ¶ 16.  The second affidavit attests that its affiant, an IBP Sales Representative, "learned that [ABS], through Scott Cottrell, was awarded a job . . . right around the corner from IBP's Sanborn, New York location, for work which IBP also bid."  Dkt. No. 15-2 ¶ 3.  The second affidavit attaches a photograph of an ABS truck "in the driveway of the customer" whose work Cottrell apparently received.  *Id.*

However, in deciding the Defendants' motion to dismiss, the Court may not consider these affidavits and photographs, which were neither attached to nor referenced within the complaint.  Instead, the Court "must confine itself to the four corners of the complaint."  *Staehr v. Hartford Fin. Serv. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (internal quotation marks omitted).  *See also Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (noting that the general rule is that the Court's review of pleadings is limited to "facts stated on the face of the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken").  Thus, the Court may only

consider the allegations in the complaint, the non-compete agreement appended

to and heavily referenced within the complaint, and the cease-and-desist letters

attached to the complaint.  *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.

2000) ("For purposes of a motion to dismiss [under Rule 12(b)(6)], [the Second

Circuit] ha[s] deemed a complaint to include any written instrument attached to it

as an exhibit or documents incorporated in it by reference.").  Although this may

seem like a trivial distinction—considering documents attached to a complaint but

refusing to consider additional documents attached to a motion opposing

dismissal of that complaint—it serves the valid purpose of disincentivizing a

"'shoot first, ask questions later' approach to pleading."  *Rogers v. Hartford Life &*

*Accident Ins. Co.*, 12-cv-0019-WS-B, 2012 WL 887482, at *6 (S.D. Ala. Mar. 15,

2012).

## II.   <u>Choice of Law</u>

Before reaching the merits, the Court must next address which state's law

applies in this case; at various points in these proceedings, the parties have cited

caselaw from New York, Ohio, and Pennsylvania.

A federal district court sitting in diversity applies the choice of law rules of

the state in which the court sits.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S.

487, 496 (1941).  Thus, in this case, the Court applies New York's choice of law

rules.  In turn, "in the absence of a violation of a fundamental state policy," New

York's choice of law rules "generally defer to the choice of law made by the

parties to a contract."  *Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 56

(2d Cir. 1991).  In this case, the non-compete agreement at issue indicates that it is to be governed by Ohio law.  *See* Dkt. 1-1 ¶ 12.  "However, New York law allows a court to disregard the parties' choice when the 'most significant contacts' with the matter in dispute are in another state.  Furthermore, even when the parties include a choice-of-law clause in their contract, their conduct during litigation may indicate assent to the application of another state's law."  *Id.* (quoting *Haag v. Barnes*, 9 N.Y. 2d 554, 559 (1961)).  As the Report and Recommendation noted, "several circumstances weigh in favor of using New York law."  Dkt. No. 18 at 13.  For example, one of the two locations Cottrell managed was in New York; Cottrell "worked at the New York location for most of his time with IBP"; "[m]any of the customers whom IBP thinks Cottrell might steal are in New York"; "IBP fired Cottrell in New York for alleged underselling that occurred in New York"; "[b]oth defendants are from New York; and "the most concrete allegation of a contractual violation—ABS's hiring of Cottrell—occurred in New York."  *Id.*  Each of these factors weighs heavily in favor of applying New York law.

However, even more significantly, the parties' "conduct during litigation" tips the balance in favor of applying New York law.  *Cargill, Inc.*, 949 F.2d at 56. The Report and Recommendation concluded, based on the factors listed above, that New York law should govern the substance of this case.  *Id.*  Neither parties' briefing before this Court challenges that conclusion.  Further, despite citing other states' law in their briefing before Magistrate Judge Scott, neither parties' brief

before this Court cites any law but New York's.  (Indeed, underscoring this point, the Plaintiff attached forty-four pages of unreported New York state court decisions to its objections.  Dkt. No. 19-1.)  The Court therefore concludes that despite their contractual intention to apply Ohio law, the parties' conduct in this litigation unquestionably points towards applying New York law.

### III.    The Plaintiff's Claims

Having addressed these preliminary matters, the Court will now turn to the merits of the Defendants' motion to dismiss.  The Plaintiff's complaint raises six causes of action, which the Court will discuss in turn.

### A. The Non-Compete Agreement

The heart of the Plaintiff's complaint is its allegation that, by working for ABS, Cottrell breached the non-compete agreement he signed with IBP.  As discussed below, New York courts limit the extent to which non-compete agreements are enforceable.  However, New York courts have *not* held that non-compete agreements are *per se* unenforceable.  Instead, a non-compete agreement's enforceability generally turns on the fact-laden question of whether the agreement is "reasonable."  Thus, the Court cannot hold at this procedural juncture that the non-compete agreement at issue is unenforceable.  However, the Court does hold that the Plaintiff's pleadings are sufficient to state a cause of action against Cottrell for breach of the non-compete agreement.

### i.      The law governing non-compete agreements in New York

In New York, "agreements that restrict an employee from competing with his or her employer upon termination of employment are judicially disfavored because 'powerful considerations of public policy . . . militate against sanctioning the loss of a [person's] livelihood.'" *Brown & Brown, Inc. v. Johnson*, 980 N.Y.S. 2d 631, 637 (N.Y. App. Div. 4th 2014) (quoting *Reed, Roberts Ass'c v. Strauman*, 40 N.Y. 2d 303, 307 (1976)).  "Therefore, no restrictions should fetter an employee's right to apply to his [or her] own best advantage the skills and knowledge acquired by the overall experience of his [or her] previous employment.  This includes those techniques which are but 'skillful variations of general processes known to the particular trade.'"  *Reed, Roberts Ass'c*, 40 N.Y. 2d at 307 (quoting Restatement (Second) of Agency § 396 cmt. b)).  However, despite New York's generally hostile attitude towards them, non-compete agreements may be enforceable, to at least some degree, when they are properly tailored to address legitimate business concerns.  In other words, naked restraints are not enforceable, but restraints that are ancillary to a legitimate business purpose may be.  New York courts have therefore long applied a general "standard of reasonableness for judging the validity of such agreements . . . balancing the need of fair protection for the benefit of the employer against the opposing interests of the former employee and the public."  *BDO Seidman v. Hirshberg*, 93 N.Y. 2d 382, 388 (1999).  *See also Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) ("[C]ourts must weigh the need to protect the

employee's legitimate concern regarding the possible loss of livelihood, a result strongly disfavored by public policy in New York.").

In *BDO Seidman v. Hirshberg*, the New York Court of Appeals put this "reasonableness" standard into more concrete terms by holding that a non-compete agreement is reasonable "only if it: (1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *Id.* at 388-89 (emphases in original); *accord Reed, Roberts Ass'c, Inc. v. Strauman*, 40 N.Y. 2d 303, 307 (1976) (reciting these same three factors). "A violation of any prong renders the covenant invalid," *id.*, although "overbroad restrictive covenants are partially enforceable 'to the extent necessary to protect [the employer's] legitimate interest.'" *Malcom Pirnie, Inc. v. Werthman*, 720 N.Y.S. 2d 863, 863 (N.Y. App. Div. 4th 2001) (quoting *BDO Seidman*, 93 N.Y. 2d at 394)). Further, even if a non-compete agreement is reasonable in light of each of the three factors set forth above, "a restrictive covenant will only be subject to specific enforcement to the extent that it is reasonable in time and area." *Reed, Roberts Ass'c*, 40 N.Y. 2d at 307.[2]

---

[2] However, if a court finds that a non-compete agreement is overbroad, an employer is not entitled to partial enforcement as a matter of right. Partial enforcement may be justified only when "the employer demonstrates an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct," and shows instead that the employer "has in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing." *BDO Seidman*, 93 N.Y. 2d at 394. At this point in the litigation, the Court offers no opinion on whether the non-compete agreement would be partially enforceable if the Court were to ultimately conclude that it is overbroad.

Finally, New York law limits non-compete agreements in one other significant way.  With respect to the first prong of *BDO Seidman*—i.e., whether the restraint "is *no greater* than is required for the protection of the *legitimate interest* of the employer"—the New York Court of Appeals has "limited the cognizable employer interests . . . to the protection [1] against misappropriation of the employer's trade secrets, or [2] of confidential customer lists, or [3] protection from competition by a former employer whose services are unique or extraordinary."  *BDO Seidman*, 93 N.Y. 2d at 389.[3]  If the non-compete agreement does not tie its restraint of the employee's activities to one of these three purposes, it is an unenforceable naked restraint on commerce.  *See Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, N.Y. 2d 496, 499 (1977) ("It is clear that . . . broad-sweeping language [that] is unrestrained by any limitations keyed to uniqueness, trade secrets, confidentiality or even competitive unfairness . . . . does no more than baldly restrain competition" and is accordingly "too broad to be enforced as written.").

### ii.    The non-compete agreement at issue in this case

The Defendants make two arguments supporting their motion to dismiss the Plaintiff's claims related to the non-compete agreement: (1) that the non-

---

[3] Some courts have suggested that *BDO Seidman* created a fourth legitimate business interest: protection of an employer's goodwill with its customers.  *See Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 534 (S.D.N.Y. 2004) ("[I]t is now clear that under New York law an employer also has a legitimate interest in protecting client relationships developed by an employee at the employer's expense.") (citing *BDO Seidman*, 93 N.Y. 2d at 391-92). However, it is unclear whether customer goodwill should be "viewed conceptually as a type of special service, an offshoot from an employer's interest in safeguarding customer information, or as a distinct cognizable interest."  *Id.*

compete agreement at issue is unenforceable; and (2) that even if the non-

compete agreement is enforceable, the Plaintiff's "information and belief"

allegations are insufficient to state a claim that Cottrell has violated the

agreement.  For the reasons discussed below, the Court rejects these

arguments.

### 1. The Court cannot conclude as a matter of law that the non-compete agreement is unenforceable

First, as the Court's earlier discussion of the law demonstrates, although

non-compete agreements may be difficult to enforce as written, neither are

they—at least in most cases—*per se* unenforceable.  Instead, as discussed

above, "New York law subjects a non-compete covenant by an employee to 'an

overriding limitation of reasonableness' which hinges on the facts of each case."

*Ticor Title Ins.*, 173 F.3d at 70 (citing *Karpinski v. Ingrasci*, 28 N.Y. 2d 45, 49

(1971)).  To be sure, a court's analysis of a non-compete agreement's

reasonableness is guided and significantly constrained by the standard

established in *BDO Seidman*.  Nonetheless, *BDO Seidman* and its progeny

demonstrate that the enforceability of a non-compete agreement turns largely on

the facts of the particular case.  *See Estee Lauder Cos. Inc.*, 430 F. Supp. 2d at

180 ("Rather, reasonableness will be judged by the specific facts underlying the

agreement and the nature of the employer's confidential information.").

In this case, there are a number of fact-bound issues that will feed into the

non-compete agreement's reasonableness.  For example, a non-compete

agreement's reasonableness is partly shaped by whether the agreement is appropriately tailored to the employer's legitimate interests. In turn, this analysis is informed by whether the employer actually has legitimate business interests, such as, for example, whether the employer has trade secrets that are protectable under New York law. Further, *BDO Seidman* established that a non-compete agreement is enforceable only where it "does not impose undue hardship on the employee, and is not injurious to the public." *Id.* at 93 N.Y. at 388-89. Finally, the fact that an employee received additional consideration for signing the non-compete agreement—as Cottrell did in this case—may impact whether the agreement is reasonable. *See Bradford v. New York Times Co.*, 501 F.2d 51, 58 (2d Cir. 1974) (noting that "[t]here is more flexibility . . . in determining whether or not the covenant is reasonable because the employee . . . is receiving some consideration for the covenant").

As should be obvious, these are all questions that can only be answered based on a more fully-developed record. Accordingly, the Court cannot conclude that the non-compete agreement is unenforceable as a matter of law.

### 2. The Plaintiff's complaint adequately states a cause of action alleging that Cottrell violated the non-compete agreement

The Defendants next argue that even if the non-compete agreement is not unenforceable, the Plaintiff's complaint is nonetheless insufficient to state a claim that Cottrell has actually violated the non-compete agreement. This argument is premised on the fact that the complaint's key allegations relating to the non-

compete agreement are all made "upon information and belief."  *See, e.g.*, Dkt.

No. 1 ¶ 19 ("Upon information and belief, Cotrell will attempt to induce employees

of IBP or its Affiliates to leave the employ of such entities.  Such inducement

would violate the [non-compete] agreement.").  However, as noted above, a

complaint is not inadequate under the *Iqbal/Twombly* standard simply because it

contains pleadings made upon information and belief.  Rather, a complaint may

contain information and belief pleading and still be sufficient under *Iqbal/Twombly*

when "the belief is based on factual information that makes the inference of

culpability plausible."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir.

2010) (citation and internal quotation marks omitted).  In other words, a

complaint's information and belief pleadings may be sufficient to state a claim

when the complaint also contains "factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678.

     In this case, the complaint's only factual allegation that Cottrell is violating

the non-compete agreement is its claim that "[o]n or about October 15, 2013, IBP

learned that, following his separation from employment with IBP, Cottrell began

employment with IBP's direct competitor, ABS."  Dkt. No. 1 ¶ 17.  However,

taking this allegation, together with the complaint's description of ABS as being

"in the business of selling and installing a wide range of building products,

including insulation," *id.* ¶ 3—and assuming, as the Court must at this stage of

the litigation, that both allegations are true—the Court may draw the reasonable

inference that that Cottrell is violating § 3(a) of the non-compete agreement, which prevents him from "engag[ing] or invest[ing] in the business of selling, marketing or installing the building products sold, marketed or installed by" IBP. Dkt. No. 1 at 5 (quoting § 3(a) of the non-compete agreement).  It is true that the complaint only alleges that ABS has hired Cottrell and not that Cottrell is, for example, attempting to "divert [IBP's] customers, suppliers, or vendors."  *Id.* ¶ 18. However, "draw[ing] on [the Court's] judicial experience and common sense," it is reasonable to infer that ABS would not have hired one of its direct competitor's former employees if ABS did not intend that Cottrell would try to bring new customers to ABS and that these new customers would likely be customers that Cottrell interacted with while he was employed by IBP.  *Iqbal*, 556 U.S. at 679. Stated another way, it is highly unlikely that ABS would have hired Cottrell to do something wholly unrelated to his former job with IBP.  This, in turn, would violate at least § 3(a) of the non-compete agreement and is sufficient to allege that Cottrell has breached the non-compete agreement.[4]

---

[4] In addition to its contention that Cottrell is soliciting IBP's customers, IBP also pleads, on information and belief, violations of each of the non-compete agreement's other restrictive covenants.  *See, e.g.*, Dkt. No. 1 ¶ 19 ("Upon information and belief, Cotrell will attempt to induce employees of IBP or its Affiliates to leave the employ of such entities.  Such inducement would violate the [non-compete] agreement.").  Some of these allegations are more difficult to accept solely on information and belief; the fact that Cottrell is now working for IBP's competitor leads to the reasonable inference that he is likely performing the same job that he performed for IBP—selling and/or installing home building supplies.  However, that same fact does not, in the Court's view, necessarily lead to the inference that Cottrell is taking the much more extreme step of asking IBP's employees to come work for ABS.  Nonetheless, nothing in the non-compete agreement suggests that Cottrell has to violate each of the restrictive covenants to be in breach of the agreement.

The Court recognizes, as the Defendants argue, that IBP's pleadings as to Cottrell's violation of the non-compete agreement toe the line that *Iqbal* and *Twombly* established.  Nonetheless, the Plaintiff has cleared that standard by alleging that Cottrell is now working for IBP's competitor, a claim from which the Court may reasonably infer that Cottrell is violating the non-compete agreement by selling, or attempting to sell, products to the customers that Cottrell sold to while he was employed by IBP.  Because, as discussed above, the Court cannot conclude on a motion to dismiss that the non-compete agreement is unenforceable, the Court's role at this point is only to determine whether the complaint pleads sufficient facts to state a cause of action for breach of the non-compete agreement.  The complaint does so, and the Court will therefore permit the cause of action to proceed to discovery.

## B. The Plaintiff's Remaining Claims

Although Cottrell's alleged breach of the non-compete agreement is at the center of the Plaintiff's complaint, the complaint pleads several other causes of action, all of which the Defendants have moved to dismiss.  The Court will discuss each in turn.

### i.  The misappropriation of trade secrets claim

The Plaintiff's second claim is that "Cottrell willfully and maliciously and through improper means has attempted to and has misappropriated IBP's confidential information and trade secrets and has used, or intends to use, such information to IBP's Detriment."  Dkt. No. 1 ¶ 32.  To state a claim for

misappropriation of trade secrets under New York law, the Plaintiff must allege

"(1) that it possessed a trade secret, and (2) that the defendants used that trade

secret in breach of an agreement, confidential relationship or duty, or as a result

of discovery by improper means."  *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38,

43-44 (2d Cir. 1999).  For the same reasons that the Court may infer from the

pleadings that Cottrell is violating the non-compete agreement, the Court may

also conclude that the Plaintiff has stated a cause of action for misappropriation

of trade secrets.  Accordingly, this cause of action may proceed.

### ii.     The breach of the duty of loyalty/breach of fiduciary duty claim

The Plaintiff's third claim is that Cottrell violated his duty of loyalty and/or

his fiduciary duty to IBP.  Dkt. No. 1 ¶¶ 35-40.  Specifically, IBP alleges that

"Cottrell's removal of IBP's confidential information, and his use or intended use

of such information to IBP's detriment, including, but not limited to, selling work to

one of IBP's customers at a below-market rate to IBP's detriment at or near the

time of his termination, constitutes a breach of his duty of loyalty or a breach of

his fiduciary duty to IBP."  *Id.* ¶ 38.

Employees, as agents of their employers, "must act in accordance with the

highest and truest principles of morality and, as fiduciaries, are forbidden from

engaging in many forms of conduct permissible in a workaday world for those

acting at arm's length."  *Sokoloff v. Harriman Estates Dev. Corp.*, 96 N.Y. 2d 409,

417 (2001) (internal quotation marks and citations omitted).  Accordingly, "an

employee owes his or her employer undivided and unqualified loyalty and may

not act in any manner contrary to the interests of the employer." *Qosina Corp. v.*

*C&N Packaging, Inc.*, 948 N.Y.S. 2d 308, 310 (N.Y. App. Div. 2d 2012) (internal

quotation marks omitted). By alleging that Cottrell sold work to a customer at a

below-market rate while he was employed by IBP, IBP has stated a cause of

action for breach of Cottrell's duty of loyalty. Similarly, any claim that Cottrell

took IBP's customer lists may also state a cause of action for breach of Cottrell's

duty of loyalty. *See Leo Silfen, Inc. v. Cream*, 29 N.Y. 2d 387, 391-92 (1972) ("If

there has been a physical taking or studied copying [of a customer list], the court

may in a proper case enjoin solicitation, not necessarily as a violation of a trade

secret, but as an egregious breach of trust and confidence while in [the

employer's] service."). Thus, the Plaintiff has stated a cause of action against

Cottrell for breach of the duty of loyalty and/or fiduciary duty.

### iii.    The tortious interference claim as to IBP's relationships with its customers, suppliers, and vendors

Next, IBP alleges that ABS has tortiously interfered with the business and

contractual relationships between IBP and its customers, suppliers, and vendors.

Dkt. No. 1 ¶¶ 41-47. The New York Court of Appeals has established two lines

of analysis for tortious interference claims. The applicable standard depends on

"the nature of the plaintiff's enforceable legal rights." *NBT Bancorp Inc. v.*

*Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y. 2d 614, 621 (1996). *See also Carvel Corp.*

*v. Noonan*, 3 N.Y. 3d 182, 189 (2004) ("We have recognized that inducing breach

of a binding agreement and interfering with a nonbinding 'economic relation' can both be torts, but that the elements of the two torts are not the same.").

First, in cases in which "there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover for tortious interference with contractual relations even if the defendant was engaged in lawful behavior." *Id.* However, this first standard for tortious interference in inapplicable in this case because IBP has not identified any contract with which ABS has interfered, much less alleged that that contract was breached. *See AM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, 02 Civ. 1363 (PKL), 2003 WL 21203503, at *5 (S.D.N.Y. May 22, 2003) (dismissing tortious interference claim where "the complaint fails to allege who these dealers are, what contracts were interfered with and that contracts with these dealers were breached").

The second type of tortious interference claim identified by the Court of Appeals—interference with a non-binding economic relationship—appears to be the tort IBP believes is at issue. *See* Dkt. No. 1 ¶ 44 ("Upon information and belief, ABS intends to interfere with these [business and contractual] relationships, causing them to cease doing business with IBP."). "Where there has been no breach of an existing contract, but only interference with prospective contract rights," the Court of Appeals has established a higher standard to state a cause of action. *NBT Bancorp Inc.*, 87 N.Y. 2d at 621. In such cases, the "plaintiff must show more culpable conduct on the part of the defendant." *Id.* In

the absence of conduct whose "sole purpose" is to "inflict[] intentional harm on plaintiff," the only "'wrongful' or 'culpable'" conduct that will support a claim for tortious interference with business relations are "acts that would be criminal or independently tortious" such as "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone." *Carvel Corp.*, 3 N.Y. 3d at 191-92 (quoting *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y. 2d 183, 191 (1980)) (some quotation marks omitted).  Reflecting the desire of courts to not unduly inhibit free competition, this is a high standard.  *See Guard-Life*, 50 N.Y. 2d at 191 ("The distinction thus made between the possible liability of a competitor for interference with performance of an existing contract and the more demanding requirements to establish liability for interference with prospective contractual relations reflects" a policy judgment that "greater protection is accorded an interest in an existing contract (as to which respect for individual contract rights outweighs the public benefit to be derived from unfettered competition).").

The Plaintiff's complaint does not allege that ABS has engaged in any fraud, misrepresentation, or similar conduct.  Thus, the only "culpable conduct" on ABS's part that would meet the Court of Appeals' strict standard are acts that are "independently tortious." *Carvel Corp.*, 3 N.Y. 3d at 191-92.  The only conduct suggested by the complaint that would be independently tortious is the allegation that ABS tortiously interfered with the non-compete agreement

between IBP and Cottrell.  In other words, the Plaintiff's tortious interference

claim against ABS as to the Plaintiff's business relationships with its suppliers

and vendors survives *only* to the extent that the Plaintiff can successfully prove

that ABS has tortiously interfered with the non-compete agreement between IBP

and Cottrell.  On this understanding, the Court will permit this cause of action to

proceed.

### iv.   The tortious interference claim as to the non-compete agreement

The Plaintiff's fifth cause of action alleges that ABS has tortiously

interfered with the non-compete agreement between IBP and Cottrell.  Dkt. No. 1

¶¶ 48-54.  Unlike IBP's fourth claim, this one does identify the contract at issue—

the non-compete agreement between IBP and Cottrell—and also alleges that the

contract was breached when ABS hired Cottrell.  To state a claim for tortious

interference with contract, the Plaintiff must plead "(1) the existence of a valid

contract between the plaintiff and a third party; (2) the defendant's knowledge of

the contract; (3) the defendant's intentional procurement of the third-party's

breach of the contract without justification; (4) actual breach of the contract; and

(5) damages resulting therefrom."  *Kirch v. Liberty Media Corp.*, 440 F.3d 388,

401-02 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.

2d 413, 424 (1996)) (internal quotation marks omitted).  Assuming that the non-

compete agreement in this case is valid, IBP's complaint alleges each of these

elements and therefore states a cause of action for tortious interference as to the

non-compete agreement.  Of course, if the non-compete agreement is later determined to be unenforceable, this cause of action must fail.

### v.    The unjust enrichment claim

Finally, the Plaintiff alleges that Cottrell and ABS have been unjustly enriched by their conduct alleged elsewhere in the complaint.  Dkt. No. 1 ¶¶ 55-58.  As the New York Court of Appeals recently noted, "unjust enrichment is not a catchall cause of action to be used when others fail.  It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.  Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled."  *Corsello v. Verizon New York, Inc.*, 18 N.Y. 3d 777, 791 (2012).  To prevail on a claim for unjust enrichment, "[a] plaintiff must show that (1) the other party was enriched, (2) at [the plaintiff's] expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered."  *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y. 3d 173, 182 (2011) (internal quotation marks omitted).

IBP alleges that "[b]y disclosing and using, or inevitably disclosing and using, IBP's confidential information to compete with IBP and to take away business from IBP, Cottrell and . . . ABS, have been unjustly enriched."  Dkt. No. 1 ¶ 56.  IBP's complaint states a cause of action for unjust enrichment.  However,

"to the extent that [any of the Plaintiff's other] claims succeed, the unjust enrichment claim is duplicative" and will be dismissed.  *Id.*

## Conclusion

For the reasons stated above, the Court does not adopt the Report and Recommendation.  Therefore,

IT IS HEREBY ORDERED that the Defendants' motion to dismiss, Dkt. No. 11, is DENIED; and

IT IS FURTHER ORDERED that the case is referred back to Magistrate Judge Scott for further proceedings.

**SO ORDERED.**


DATED: July 25, 2014              _s/ Richard J. Arcara_____
Buffalo, New York

                                  HONORABLE RICHARD J. ARCARA
                                  UNITED STATES DISTRICT JUDGE